UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PETRUCCELLO,

        Plaintiff,

v.                                      Case No. 05-74454
                                      Hon. Victoria A. Roberts

TELEFLEX AUTOMOTIVE GROUP,
A DIVISION OF TELEFLEX INCORPORATED,

        Defendant.
_____

**<u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>**

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion to dismiss. For the following reasons, the Court **GRANTS** Defendant's Motion.

**II.    BACKGROUND**

This case arises out of the termination of Plaintiff, John Petruccello, from Defendant, Teleflex Automotive Group.

Plaintiff began working for Defendant as a product engineer in 1988.[1] He was later promoted to Vice President of Global Technical Services. On January 10, 1994, Plaintiff signed an employment agreement ("Agreement") with Defendant that undisputedly stated Plaintiff's employment was at-will.

---

[1]Defendant asserts Plaintiff's employment began on January 10, 1994. For purposes of this Motion, the facts are taken as alleged by Plaintiff.

1

Sometime later, Defendant promulgated a "Code of Ethics" ("Code") detailing Defendant's employment policies.[2]  Chapter XVIII, entitled "Additional Information," states that "[t]he Code and the policies discussed in it are not an employment contract. No contractual rights are created by issuing the Code or the policies."[3]

On June 21, 2005, Defendant terminated Plaintiff - Plaintiff says without just cause.  Specifically, Plaintiff alleges he was fired because he is homosexual.  Further, he contends he was given a less favorable severance package than similarly situated heterosexual employees.  Plaintiff concedes that upper management knew he was homosexual for the duration of his employment with Defendant.

On October 10, 2005, Plaintiff filed a Complaint in Oakland County Circuit Court. Defendant removed here on November 22, 2005, based on diversity jurisdiction. Defendant filed a Motion to dismiss pursuant to FRCP 12(b)(6) on November 23, 2005.

## III.   STANDARD OF REVIEW

"[A] complaint may be dismissed for failure to state a claim upon which relief can be granted.  The court must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

---

[2]Neither party indicates when the Code of Ethics was created but it appears to be copyrighted in 2003.

[3]The Code is attached as an exhibit to the Complaint, so the Court may consider it without treating the Motion as one for summary judgment.  *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 603 (6th Cir. 2005).

2

*Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)(citation omitted).

**IV.    APPLICABLE LAW AND ANALYSIS**

Plaintiff raises seven claims arising out of his termination without just cause: (1) breach of implied contract; (2) misrepresentation; (3) negligent misrepresentation; (4) negligence; (5) promissory estoppel; (6) equitable estoppel; and, (7) unjust enrichment.

**A.    Breach of Implied Contract**

Defendant argues that Plaintiff's claim for breach of an implied employment contract should be dismissed because there is a contradictory express contract, and the Code Plaintiff relies on has a disclaimer stating it is not contractual.

Under Michigan law, there is a presumption that employment is at-will, unless it is overcome by:  (1) proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee.  *Lytle v. Malady*, 458 Mich. 153, 164 (1998)(citations omitted).

 Plaintiff claims he had a legitimate expectation that he could only be fired for just cause based on Defendant's policies, actions, annual evaluations, comments, and internal communications. [Complaint, ¶¶ 17-18].  The policies Plaintiff refers to are contained in Defendant's Code of Ethics, which contains an express disclaimer that the Code and its policies do not create any contractual rights. [Complaint, Exhibit E, p.12].

In *Lytle*, the court held there is a two-step inquiry to determine if an employee has a legitimate expectation claim: (1) determine if the employer promised anything,

3

and (2) determine whether the promise is "reasonably capable of instilling a legitimate expectation of just-cause employment." *Lytle*, 458 Mich. at 164-165.

### 1.   Plaintiff Fails To Allege Defendant Promised To Only Terminate Him For Just Cause.

Plaintiff does not allege in his Complaint that he was promised by Defendant that he could only be terminated for just cause. Plaintiff merely asserts that various acts and communications by Defendant instilled a legitimate expectation of just cause employment. Plaintiff admits that his employment agreement was for at-will employment. [Plaintiff's Response, p. 5].

Plaintiff relies heavily on Defendant's Code of Ethics. However, the Code cannot be construed as a promise. Nothing in it limits or describes the guidelines for employee termination; it only states that disciplinary action will be taken for failure to comply with its policies.

"Not all policy statements will constitute a 'promise'." *Lytle*, 458 Mich. at 165. In *Lytle*, the court described a promise as a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* In contrast, "a 'policy' is commonly understood to be a flexible framework for operational guidance, not a perpetually binding contractual obligation." *Id.*

A claim that a policy was a promise can be defeated by: (1) a lack of specificity in the terms and provisions of a policy, or (2) the policy is to act in a particular manner as long as the employer so chooses. *Id.* Plaintiff fails to identify any specific terms or provisions indicating that termination will only be for just cause. Also, the Code is

4

subject to amendment from "time to time." [Complaint, Exhibit E, p. 12].  Thus, any policies require an employee to act in a particular manner only for as long as the employer chooses because the policy may be unilaterally amended.  This precludes the Code from constituting a promise of just cause employment.

Plaintiff also refers to his performance evaluation.  The evaluation only addresses his performance, and does not shed light on whether Plaintiff's employment is terminable at-will or only for just cause. [Complaint, Exhibit B].

Plaintiff does not reference any other actions or communications by Defendant that could constitute a promise of just cause employment.

> **2.    Plaintiff Cannot Allege He Had a Legitimate Expectation of Just Cause Employment.**

Even if Plaintiff established a promise, he could not have a legitimate expectation that his employment was terminable only for just cause.

In *Lytle*, the court held an employee cannot maintain that he had a legitimate expectation of just cause employment based on employer policies where: (1) the handbook contained a specific disclaimer of contractual intent, (2) the handbook did not contain detailed discharge procedures or other specific policies to reasonably support the employee's position, (3) the employee did not receive the handbook in the course of employment negotiations or discussions involving oral assurances of job security, and (4) the employee does not allege other evidence sufficient to support the conclusion that the employee legitimately expected that the policy rose to the level of a promise of just cause employment.  *Lytle*, 458 Mich. at 166-167.

There is no dispute that the Code contained a disclaimer of contractual intent.

Plaintiff argues in his response that the disclaimer was a "small hidden inconspicuous statement." [Plaintiff's Response, p. 9].  Contrary to Plaintiff's characterization, the disclaimer is in the same size font as the rest of the Code.  It is located in a section at the end, but it is not hidden.  The disclaimer is one of only three sentences in the section.  Notably, it is one of only two statements in the entire Code that is printed in boldface type.

In addition to the explicit disclaimer, Plaintiff fails to allege the existence of detailed discharge procedures or other specific policies supporting his expectation of just cause employment.  He also does not allege he received the Code in the course of employment negotiations, or in connection with an oral assurance of job security.  Further, he does not allege that the policy or any other evidence rose to the level of a promise of just cause employment.  Plaintiff failed to state a claim that he had a legitimate expectation of just cause employment sufficient to overcome the presumption - and express contract provision - that his employment was terminable at-will.

### 3. The Code Could Not Be a Modification of the Employment Agreement.

Although not alleged in his Complaint, Plaintiff contends in his Response that the Code was a modification of the employment agreement.  Plaintiff points out that there is no language preventing modification in the employment agreement.

"Generally, parties are free to take from, add to, or modify an existing contract." *Port Huron Education Association v. Port Huron Area School District*, 452 Mich. 309, 326 (1996).  However, mutual assent is necessary for a modification.  *Id.* at 326-327.  In Michigan, when deciding if a party assented to a contract, courts follow the objective

theory of assent, "focusing on how a reasonable person in the position of the promisee would have interpreted the promisor's statements or conduct."  *Rood v. General Dynamics Corporation*, 444 Mich. 107, 119 (1993).

In this case, the alleged modification was the Code.  The Code contained a disclaimer that it was not an employment contract and it did not create contractual rights.  Therefore, no reasonable person could interpret the Code as an assent by the Defendant to modify Plaintiff's employment agreement from at-will to just cause employment.

### B.    Misrepresentation

Plaintiff claims that although Defendant made representations through the Code of Ethics that it respected cultural diversity and does not tolerate discrimination based on sexual orientation, nonetheless, Defendant fired him because of his sexual orientation and gave him a lower valued severance package than similarly situated heterosexual employees.

Defendant argues Plaintiff failed to state a claim because misrepresentation cannot be based on future promises.

Under Michigan law, fraud can be established under three theories: (1) traditional common-law fraud; (2) innocent misrepresentation; and (3) silent fraud.  *M&D, Inc. v. W.B. McConkey*, 231 Mich.App. 22, 26-27 (Mich.App. 1998).  Plaintiff does not identify what he is claiming in his Complaint, but does cite the elements of fraudulent misrepresentation and innocent misrepresentation in his Response.

### 1.    Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, the plaintiff must allege the

7

following elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Hi-Way Motor Company v. International Harvester Company*, 398 Mich. 330, 336 (1976).

Plaintiff's claim for fraudulent misrepresentation fails because he did not allege any reliance on his part. "Michigan courts have repeatedly cited the elements of a claim of fraud and misrepresentation as requiring that the plaintiff **acted** in reliance upon a material misrepresentation." *Phinney v. Perlmutter*, 222 Mich.App. 513, 534 (Mich.App. 1997)(emphasis added). Plaintiff does not allege any action or change in position in reliance on Defendant's representations. Plaintiff only claims that he "remained employed." [Complaint, ¶35].

Defendant employed Plaintiff before it adopted the Code of Ethics. Upper management knew Plaintiff was homosexual before its written anti-discrimination policy went into effect. Following adoption of the Code, Plaintiff continued to be employed by Defendant, in the same position. He does not allege that his continued employment was in any way induced by Defendant's representations in the Code. While Plaintiff may have **believed** the policies set forth in the Code and felt reassured by them, he did nothing that constituted **acting in reliance** upon them. Accordingly, Plaintiff has not stated a claim for fraudulent misrepresentation.

### 2.      Innocent Misrepresentation

A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation.  The innocent misrepresentation rule represents a species of fraudulent misrepresentation but has, as its distinguished characteristics, the elimination of the need to prove a fraudulent purpose or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff, and has, as added elements, the necessity that it be shown that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure to the benefit of the party making the misrepresentation.  Thus, the party alleging innocent misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false.  Finally, in order to prevail on an innocent misrepresentation claim, a plaintiff must also show that the plaintiff and defendant were in privity of contract.

*M&D, Inc.*, 231 Mich.App. at 27-28 (citations omitted).

As discussed above, the Plaintiff failed to allege reliance.  Additionally, the Plaintiff did not assert that Defendant's representations were made in connection with the making of a contract.  Consequently, he failed to state a claim for innocent misrepresentation.

### C.      Negligent Misrepresentation

In order to state a claim for negligent misrepresentation, a plaintiff must allege "that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."  *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 262 Mich.App. 485, 502 (Mich.App. 2004)(citation omitted).

Again, Plaintiff's failure to allege reliance is fatal to this claim.

9

**D.     Negligence**

To state a claim for ordinary negligence, the plaintiff must allege: (1) the existence of a legal duty by defendant toward plaintiff; (2) the breach of such duty; (3) a proximate causal relationship between the breach of such duty and an injury to plaintiff; and (4) damages resulted.  *Stephens v. Dixon*, 449 Mich. 531, 539 (1995).

Plaintiff asserts that the promulgation of the Code of Ethics, particularly the policy that prohibits discrimination based on sexual orientation, created a duty of care from Defendant to Plaintiff to ensure Plaintiff was not discriminated against.  That duty was allegedly breached when Defendant terminated Plaintiff's employment and gave him a smaller severance package, because he is a homosexual male.

Plaintiff fails to state a claim for negligence.

Negligence is a "species of a generic action based in torts."  *Smith v. Department of Public Health*, 428 Mich. 540, 603 (1987).  The other type of tort is intentional tort.  Negligence is distinguishable because unintentional conduct is the cause of the alleged injury.  "If one willfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence.  The act is characterized by willfullness, rather than by inadvertence, it transcends negligence - is different in kind."  *Cogswell v. Kells*, 293 Mich. 541, 545 (1940).  Intentional torts and negligence are distinct actions.  *Vining v. City of Detroit*, 162 Mich.App. 720, 727-728 (Mich.App. 1987)(comparative negligence doctrine does not apply to intentional torts); *Striker v. Martindale*, 372 Mich. 578, 580-581 (1964)(look to what conduct is alleged, not what plaintiff pleads to determine which type of action it is).

Plaintiff claims Defendant instituted a policy that required it to "ensure that

10

Plaintiff was not discriminated against because of his sexual orientation." [Complaint, ¶54]. Plaintiff claims Defendant, in direct violation of its own policy, fired him because of his sexual orientation. [Complaint, ¶56]. He also incorporated his earlier allegations into his claim for negligence. Plaintiff claims Defendant "engaged in discrimination against Plaintiff." [Complaint, ¶48].

Defendant could not have unintentionally discriminated against Plaintiff. Taking the facts as alleged by Plaintiff, Defendant fired him *because* he is a homosexual male and, on the same basis, gave him a lower severance package. This alleges intentional conduct and cannot form the basis of a negligence claim.

### E.    Promissory Estoppel

In order to state a claim for promissory estoppel the plaintiff must allege: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forebearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Marrero v. McDonnell Douglas Capital Corporation*, 200 Mich.App. 438, 442 (Mich.App. 1993). "The sine qua non of promissory estoppel is a promise that is definite and clear." *Id.* "The doctrine of estoppel should be applied where the facts are unquestionable and the wrong to be prevented undoubted." *Id.* at 443.

As discussed above, Plaintiff failed to allege a clear and definite promise, and did not allege reliance. Therefore, his claim for promissory estoppel fails.

### F.    Equitable Estoppel

Plaintiff's claim for equitable estoppel is frivolous. Both Defendant and Plaintiff

11

cite cases where Michigan courts clearly preclude equitable estoppel as a cause of action. "Equitable estoppel is not an independent cause of action, but rather a doctrine that may assist a party by preventing the opposing party from asserting or denying the existence of a particular fact." *West American Insurance Company v. Meridian Mutual Ins. Co.*, 230 Mich.App. 305, 309-310 (Mich.App. 1998).  *See also, Marrero*, 200 Mich.App. at 443-444 ("[e]quitable estoppel is usually invoked as a defense; it is not a cause of action in itself and provides no remedy such as damages.").

### G.    Unjust Enrichment

The elements of a claim for unjust enrichment are: (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant.  *Belle Isle Grill Corporation v. City of Detroit*, 256 Mich.App. 463, 478 (Mich.App. 2003).  "If this is established, the law will imply a contract in order to prevent unjust enrichment...[h]owever, a contract will be implied only if there is no express contract covering the same subject matter."  *Id.*

Plaintiff fails to state a claim for several reasons.  First, he does not allege the inequitable retention of a benefit by Defendant.  The benefit to Defendant was Plaintiff's continued employment following introduction of the Code.  The benefit to Plaintiff was his compensation.  Plaintiff does not allege any violations of the Code prior to his termination.  Therefore, both parties received equal benefit until the time of Plaintiff's termination.

Second, there is an express agreement covering the same subject matter. Plaintiff's employment agreement provides he is an at-will employee.  Because he was an at-will employee, and the anti-discrimination policy was not contractual by virtue of

12

the disclaimer, Defendant was free to terminate Plaintiff on the basis of his sexual orientation, although Defendant denies that Plaintiff was terminated on that basis.

Thus, there was an express agreement that allowed Defendant to terminate Plaintiff's employment for any reason that does not violate the law.  Currently, no law in Michigan prohibits discrimination on the basis of sexual orientation.  Therefore, the doctrine of unjust enrichment cannot be used to imply a contract that would be contrary to the terms of Plaintiff's employment agreement.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to dismiss.

**IT IS SO ORDERED.**

**S/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated:  April 17, 2006**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 17, 2006.**
>
> **S/Carol A. Pinegar**
> **Deputy Clerk**

13